The next case on calendar is Bly-Magee v. Premo. Good morning, Your Honors, and may it please the Court. I'm Judy Barris for Appellant Charlotte Bly-Magee. I'd like to begin by addressing of Howie's partial public disclosure argument. We're here this morning because of the continued perpetration of fraud on the Court by the California Office of Attorney General. This is the second time this case has been on appeal after the OAG in written and oral arguments made misrepresentations of both fact and law with the specific intent to mislead and deceive the lower court in an order to invite error. Let me ask this. The district court did not rely on partial disclosure. Is that correct? It said that that hadn't been adopted in our circuit and he wasn't going to rule on it. Actually, Your Honor, my understanding is that it did actually go, excuse me, I'm nervous, against Dunleavy. They departed from Sanders. Do you remember what the district court did? Well, the district court, there was an audit that was supposedly put in front on the Internet before Ms. Bly-Magee filed her action. This audit has people have come forward that used to work for the State and has said that it is indeed false. It was put on the Internet in 2003, but Ms. Bly-Magee filed her action in 2001. Therefore, it had not been disclosed. But it says, the very last sentence of footnote, I guess it's footnote 4, says it declines to address the partial public disclosure issue. So I don't think we need to hear anything about partial disclosure. Thank you, Your Honors. Okay. Then I'd like to move on. Also, appellees contend that the allegations of false certification of compliance with the Federal regulations in the State plan are general and could be callusory and do not meet 9b specificity standards because the document covers a multitude of transactions. What I'm referring to is pursuant to 34 CFR 8011, the United States Office of Education requires that the States must submit State plans for receiving Federal grants. Each State plan must include certification that the State will comply with all applicable Federal regulations and statutes in effect. The State plan is submitted to the U.S. Department of Education prior to the beginning of each fiscal year and triggers the release of funds. The funding mechanism is quite simple, no State plan, no funds. Appellees' statement that the State plan covers a multitude of transactions is belied by their failure to identify said transaction and their failure to cite any statute or case law to support their position. The appellees also claim that allegations of false certification of compliance with the Federal regulations on the United States Department of Education's RSA 2 form are general and conclusory because this document covers a multitude of transactions. In fact, the United States Office of Management and Budget requires them to submit OMB Form 1820-0017, also known as RSA Form 2, certifying that Federal rehabilitation funds were spent in compliance with Federal regulations. Certifying the compliance with the Federal regulations on the form constitutes a false claim under the False Claim Act because it causes the government to release the funds which were misappropriated under the terms of the grant. Appellees' statement that RSA Form 2 covers a multitude of transactions is belied by their failure to identify such transactions and their failure to cite any state or case law to support their position. Further, Appellant Primo claims she did not know that falsely certifying compliance with Federal regulations rendered the state plan false. In fact, Section 1, Legal Basis, State Certifications of the California State Plan provides, as a condition for the receipt of Federal funds under Title I, part of the Act of the Provision of Vocational Rehabilitation Services, the California Health and Human Service Agency agrees to operate and administer the State Vocational Rehabilitation Services Program in accordance with the provisions with the State Plan, the Act, and all applicable regulations, policies, and procedures established by the Secretary. Funds made available under Section 110 of the Act are used solely for the provision of vocational services under Title I and the administration of the State Plan. In her third amending complaint, Appellant Primo, as alleged in the third amending complaint, Appellant Primo signed the certification knowing that she had illegally dispersed funds under the alleged money laundering scheme for the previous fiscal year and had already entered into contracts for the forthcoming fiscal year to keep the contractual scheme afloat. It would seem that a political appointee earning an annual six-figure income will be able to read and understand what she's signing. Fourth, the appellees contend that the government will not take back their funding if they misappropriate funds. Appellees have argued that the regulatory compliance is not the basis of the receipt of the vocational rehabilitation funding and there are administrative remedies to address a lack of compliance. In fact, this is not true. As Appellant Pled, in the third amending complaint, Congress requires that Federal rehabilitation funds must be spent pursuant to specific regulations and statutes and grantees must certify compliance with said regulations and statutes in order to receive funds. The grantees are not simply permitted to freely use Federal-controlled dollars at their whim. Whether or not administrative remedies are available is irrelevant here. Liability under the False Claim Act permits the government to recover any consequential damages and penalties that suffers as a result as a submission of the false claim. I would like to reserve any remaining time I have for rebuttal. All right. You may. Good morning. Ken Legge for the State of California Department of Rehabilitation Respondents. The groundwork for the issue that's before the Court today was laid by this Court when it issued its published opinion approximately two years ago. And as you may recall, there was rulings about the public disclosure issue, but at the same time, the Court remanded on the final fiscal year, 1999-2000, and the most telling comment came in this Court's opinion when it said, we're going to remand to the trial court, but we note that the allegations are exceedingly general. And that Court, that analysis was exactly correct. And what we have done, as you can see in our brief, is that made a detailed analysis comparing the second amended complaint to what the changes were in the third amended complaint. And I think the most telling example of just exactly that plaintiff has alleged nothing new, added no specificity, is where we point out at paragraph 52 of the third amended complaint, where the plaintiff repeated the exact same charging allegations. We're talking about the primary alleged wrongdoing by the State of Michigan. Same exact allegations, except she reshuffled the order of those paragraphs and then changed from numbering to lettering. That's it. The exact same allegations. Then following the same pleading mannerism, then the plaintiff goes on to allege with the compliance documents. The only difference in the third amended complaint is that the compliance documents had issue. I think now instead of a number of forms, now it's just the RSA 2. Let me ask you a question. The contention is that there was a kickback involved here because contributed hours were credited and in return a particular agency got funds. Now, is that a kickback, if shown? Absolutely not. In fact, we've shown very clearly in our brief, and there's kind of been this part of the unclearness in the allegations, is that plaintiff has kind of gone between saying there was fraud, but then when we force the argument and we cite the exact regulation that says third party cooperative agreements allow in-kind contributions from local entities. Specifically in this case, in our brief, and in fact plaintiff admitted in their brief, and I believe in the briefing in the district court, that this type of contractual device has gone on for over 20 years. It is well known to the federal government. There's a specific regulation that we cite in our brief that says in-kind contributions can come from local entities, and that's exactly very up front, very out in the open with the federal government. And I think what the allegations then show, and I think the district court noted in their ruling, is that at the end of the day what we have here is the plaintiff's general displeasure with this practice. And it's one thing to come in and say, you know, I don't like these. I don't think they're efficient. I don't think they're appropriate. Maybe it's not the best use of resources. But it's clearly allowed under the statutes, and it's clearly not a false claim. So then where does the plaintiff fall back? We have repeatedly stated to the plaintiff, okay, if this case isn't about just simply the allegation that it's a kickback scheme, give me some specifics, which gets us back into Rule 9b. The plaintiff has not and never has been able to do that. And this has been, frankly, been going on for years, never has been able to come out and say, here's a specific allegation, as Rule 9b requires, as this court has recommended. And the reason it becomes important is because the alleged wrongdoing here is a state plan. And there's been discussion by the plaintiff, state plan, how do we know that that means multitude of services? Well, not to be over-simple here, but it's a state plan. It covers the state. The regulation clearly covers the state. It covers the services for the whole state. And it gets back to, I think there was a reference that counsel just made a moment ago, reading from their reply brief, was that Brenda Premo knew when she signed that state plan that she was illegally dispersing funds. Well, that's why Rule 9b is important. What funds? What transaction? Which recipient of services are we talking about? There's no way to basically go in and respond to any allegations, because it's overly general. And whenever, essentially when plaintiffs' feet are put to the fire, so to speak, tell us what is exactly the fraud, we just get back to generalities. And Rule 9b, and I think this is the Court's previous rulings, and again, in the companion case, Blimey v. 2, which this Court terminated at the last time we were here on that exact same ground, and I think you look at the two cases together, frankly, I think the last go-around, this Court remanded because it found that the Court had not given adequate attempts to plead specific facts. The plaintiff had now had that opportunity. We went back one more time. The trial court judge gave them a couple more opportunities to come up with specific facts, and I think our brief clearly lays it out in detail that they just have not done that. And with respect to the alternative argument that we have put forth as far as the partial public disclosure doctrine, we have put that in our brief as an alternative argument. If the Court is inclined to reverse the district court's ruling, then again, Your Honor correctly noted the district court basically said he's ruling only on 9b and declined to address that. But if the Court for some reason were inclined to reverse, then we believe under the law we would be entitled to have that issue addressed. Thank you. All right. Unless there are any questions, I'm not sure. No, I have no questions. No questions. No, he has one. No, sorry, I meant to say I have no questions. Okay. Thank you. Your Honors, what I believe that we have here is the State calling contracts and contracts and cooperative agreements the same thing, when actually they are not. Ms. Bly-McGee uncovered that the State was misappropriating the Federal funds by saying that there were in-kind matches through contracts, and that is permissible. However, contracts must be bid on and put out for the public good so that when the State is bidding on a contract, the State is bidding on a contract. And the State is bidding on a contract that we know that we're receiving the most value for our services. These contracts, then, were called cooperative agreements, and the cooperative agreements actually require a cash match from the government, from the California State government, that was not provided. By doing that, it was a misuse of these Federal funds. What's the citation, statutory citation for that? Okay. I'm very nervous. This is a very big opportunity for me to argue in front of you. I'm sorry, Counsel. We can't hear you. I said I'm sorry. I'm nervous and I'm flustered. This is a very big opportunity for me. I took this case pro bono to help the disabled, and I have not been able to do that. So you can send us a citation. Thank you, Your Honor. All right. Fine. Do you have anything else? Also, the appellee has talked about we cannot – there must be certain transactions to fund for false claims. And I wanted to point out that actual damages need not be determined by the United States Supreme Court and the circuit courts for 60 years. In United States, Ex Rel. Marcus v. House, the Court determined a failure to show actual damages in these instances where the government apprehended the false claims before making payment would not preclude recovery under the False Claims Act. In Rex Traber Company v. United States, the Court affirmed a finding of civil penalty liability against a company which fraudulently took advantage of the veterans' preference in the Surplus Property Act to purchase war surplus trucks where the complaint did not allege damages. Also, numerous published opinions from various circuits demonstrate that the damage to the United States is not an element of recovery under the False Claims Act. I would like to submit at this point. All right. You'll send a letter with a copy to the counsel for the defendants? Yes. Send us the citation to the record that Judge Fletcher requested. Thank you. All right. Thank you. The case argued is submitted.
judges: Fletcher B. , Fisher, Gould